No. 23-1625

UNITED STATES OF AMERICA
IN THE COURT OF APPEALS FOR THE SIXTH JUDICIAL CIRCUIT

on Appeal from the Judgment of the
United States District Court for the Eastern District of Michigan,
C.A. No. 20-cv-13303, Laurie J. Michelson, District Judge

ANNA MCKINNEY.
Plaintiff-Appellant,

v.

COUNTY OF MACOMB, MICHIGAN,
Defendant-Appellee.

APPELLANT'S  BRIEF

ORAL ARGUMENT REQUESTED

With: Statement Explaining Why Oral Argument Should Be Permitted,
Certificate of Compliance With  Type-Volume Limit, and Certificate of Service

CRANBROOK LAW GROUP, P.C.
BARRY R. POWERS
38550 Garfield Road, Suite A
Clinton Township, Michigan 48038
(248) 515-8599
Counsel for Plaintiff-Appellant
Anna McKinney

TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Statement Explaining Why Oral Argument Should Be Permitted . . . . . . . . . . iv

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Statement of Question Presented for Review . . . . . . . . . . . . . . . . . . . . . . . vii

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Conclusion and Statement of Relief Requested . . . . . . . . . . . . . . . . . . . . . 17

Statement of Countable Words . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Addendum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

TABLE OF AUTHORITIES

*Cases*

*Bisker v GGS Info. Servs.*,
2010 U.S. Dist. LEXIS 53879 (M.D. Pa. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Conaway v Detroit Pub. Sch. Cmty. Dist.*,
2021 U.S. Dist. LEXIS 241862 (E.D. Mich. Dec. 17, 2021) . . . . . . . . . . . . . . . . 11

*Crabill v Charlotte Mecklenburg Bd. Of Educ.*,
423 Fed. Appx. 314 (4th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*DeRosa v Nat'l Envelope Corp.*,
595 F.3d 99 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Fisher v Nissan N. Am., Inc.*,
951 F.3d 409 (6th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

*Hostettler v Coll. Of Wooster*,
895 F.3d 844 (6th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Humphrey v Mem'l Hosps. Ass'n*,
239 F.3d 1128 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8, 12

*Ingram Johnson & Steele, LLP*, No. 3:20-cv-00820,
2022 U.S. Dist. LEXIS 97574 (M.D. Tenn. June 1, 2022) . . . . . . . . . . . . . . . . . . 11

*Karraker v Rent-A-Center, Inc.*
411 F.3d 831 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Keith v Cnty. of Oakland*,
703 F.3d 918 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kelly v First Data Corp.*,
No. 1:19-cv-372, 2020 U.S. Dist. LEXIS 13239
(S.D. Ohio Jan. 27, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Laguerre v. Natl Grid USA*, 2022 U.S. App. LEXIS 6328
(2d Cir. March 11, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Langon v Dep't of Health & Hum. Servs.*,
959 F.2d 1053 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*MacMillan v City of New York*,
711 F.3d 120 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Masters v Class Appraisal, Inc.*, No. 2:17-cv-11283,
2019 U.S. Dist. LEXIS 161487 (E.D. Mich. Sept. 23, 2019) . . . . . . . . . . . . . . . . 11

*Mosby-Meachem v. Memphis Light, Gas & Water Div.*
883 F.3d 595 (6th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rorrer v City of Stow*,
743 F.3d 1025 (6th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Solomon v Vilsack*,
763 F.3d 1 (D.C. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Turner v Hershey Chocolate U.S.*,
440 F.3d 604 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Weijie Lu v Univ. of Dayton*,
2023 U.S. App. LEXIS 31349,
2023 WL 81872992023 FED App.
0485N (6th Cir., November 27, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Woodruff v Peters*,
482 F.3d 521 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Statutes*

42 U.S.C. §12111(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Law Reviews*

Arlene S. Kanter,
*Remote Work and the Future of Disability Accommodations*,
107 CORNELL L. REV. 1927 (November, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

JURISDICTIONAL STATEMENT

*A.  Basis for district court's subject matter jurisdiction:*

This action arises under the laws of the United States, specifically, the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. The district court has had original jurisdiction over Plaintiffs' claims arising under the laws of the United States under 28 U.S.C. § 1331. This has been, at all relevant times, a case of actual controversy within the jurisdiction of the district court such that the court has been empowered to declare the relative rights, duties, and other legal relations of the parties *inter sese* with the force and effect of a final judgment under 28 U.S.C. § 2201(a) and such further relief as may become necessary or proper under 28 U.S.C. § 2202. U.S. CONST. art. III, § 2.

*B.  Basis for court of appeals' jurisdiction:*

The United States constitution vests the court of appeals with jurisdiction over this appeal of a case in law and equity of actual controversy arising under the constitution and laws of the United States. U.S. CONST. art. III, § 2. The Sixth Judicial Circuit of the United States is empowered, constituted, and set under a Congressional grant of authority as set down in 28 U.S.C. § 41, which authorizes it to exercise judicial review over Sixth Circuit cases, including appeals of decisions arrived at by United States District Courts of Michigan and other inferior United States Courts and administrative agencies within Michigan, as well as elsewhere within the four-state region that comprises the Sixth Judicial Circuit of the United States. *See also* 28 U.S.C. § 43(a)(establishing circuit courts of appeals in the Sixth Judicial Circuit, as well as all other federal judicial circuits).

"The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ." 28 U.S.C. § 1291(a).

Appeals from reviewable decisions of a district court, irrespective of appeals from an interlocutory order or decree of inferior courts, shall be taken to the courts of appeals "[f]rom a district court of the United

States to the court of appeals for the circuit embracing the district." 28 U.S.C. § 1294(a).

*C. Filing dates establishing timeliness of appeal:*

Plaintiff-Appellant McKinney takes this appeal – her appeal of right from the district court to this Honorable Court from:

  1) the final judgment entered on June 6, 2023, RE 32, Page ID # 1321; and

  2) the opinion and order granting the motion of Defendant-Appellee County of Macomb for summary judgment entered on June 6, 2023, RE 30, PageID ## 1294-1320.

McKinney promptly filed her notice of appeal of right with the district court, thus commencing the present appeal, on July 16, 2023, RE 32, PageID # 1322. Her notice, thus, was timely. Fed. R. App. P. 4(a)(1)(A). And it duly vests jurisdiction in this Honorable Court over the final judgment. Fed. R. App. P. 3(a)(1). Additionally, it vests in this Honorable Court jurisdiction over all orders of the trial court, which, for purposes of this appeal, are deemed merged into the designated judgment. Fed. R. App. P. 3(c)(4)&(5).

*D. This appeal is from a final judgment that disposes of all parties' claims, which establishes the court of appeals' jurisdiction over this appeal. Fed. R. App. P. 3(C)(5)(A).*

## STATEMENT OF QUESTION PRESENTED FOR REVIEW

Did the trial court err in granting summary judgment in favor of Defendant-Appellee County of Macomb on the dual claims of Plaintiff-Appellant Anna McKinney, a licensed social worker with over twenty years of successful experience in that profession, whom the County employed as a social worker, that the County: A) discharged her because of her mental disability, discriminating against her on the basis of her disability, in violation of the Americans With Disabilities Act; and B) that the County unlawfully discharged her in retaliation for her repeatedly making requests of the County -- a total of four -- for reasonable accommodations of her disability, all of which the County ignored, on the basis that, as a pure matter of law, her disability rendered her unqualified to be a County social worker and failed to present sufficient direct evidence that the County discharged he in response to her requests for accommodation?

Plaintiff-Appellant answers: "Yes."

Defendant-Appellee answers: "No."

The trial court answered: "No."

This Court should answer: "Yes."

STATEMENT OF THE CASE

Plaintiff was employed by Defendant as a Support Coordinator at the

Department from May 2005 until July 17, 2019, and as a contract worker from 2002-

2005. Defendant, through the Department, provides mental health treatment

and support services to adults with mental illness and developmental disabilities.

Defendant further provides individual-based services which include outpatient or

home-based treatment; mental health assessment; residential, respite or support ser-

vices; or other alternatives as determined by individual needs. Plaintiff met with

consumers to assess their needs and identify services that the Department could pro-

vide.

Plaintiff drafted individual service plans for her consumers. Plaintiff's tasks

included helping consumers develop their cognitive skills so they could function

domestically and socially. At times, Plaintiff assisted consumers to find employment

and participate in recreational activities. On or around late 2015, the Department

transitioned to a "mobile office only" with "drop down stations."

Plaintiff was required to meet with consumers at their residences or in

the community. Plaintiff was required to meet with each consumer for a minimum

of one hour per month. When Plaintiff was hired, she was responsible for twenty

consumers. At the end of Plaintiff's employment, she was responsible for fifty-three

consumers.

As Defendant transitioned to a mobile office policy, Plaintiff began to experience behavioral health issues. Around this time, Plaintiff saw Dr. Michael Vredevoogd. Plaintiff was treated for Attention Deficit Disorder and was prescribed medications. On November 13, 2016, Plaintiff was hospitalized at McLaren Hospital in Macomb, MI, for depression, and a suicide attempt.

Plaintiff was diagnosed with an anxiety disorder, ADHD, a neurological disorder affecting how brain functions, depression, and a sleep disorder. These conditions substantially impact Plaintiff's sensory, mental, and physical abilities. Plaintiff's conditions meet the definition of a disability as described by the ADAAA.

In 2017, Plaintiff saw Dr. Nina Anderson for treatment. Dr. Anderson continued Plaintiff on her medications. In March 2018, Plaintiff suffered from panic attacks while in transit from seeing consumers. Plaintiff told Defendant about her breakdown and continuing need for an accommodation. Defendant suggested Plaintiff look for other employment and did not discuss accommodations with her.

On or around March 4, 2018, Defendant received an accommodation request from Dr. Deborah Greening on Plaintiff's behalf. Dr. Greening indicated that Plaintiff needed an accommodation due to her impaired attention and inability to concentrate while working in an office and mobile environment. Dr. Greening's accommodation request stipulated that Plaintiff be allowed to work from home because Plain-

tiff could not concentrate in light of continuously changing tasks and noisy environments. Since Defendant had transitioned to a mobile office plan, this accommodation was reasonable because Plaintiff could drive to her consumers and then complete the documentation portion of her position at home. Plaintiff's accommodation request was denied by Defendant, claiming it did "not feel comfortable" with the request. This determination was made by Defendant in spite of the fact that other similarly situated employees were allowed to work from home.

As a result of hospitalization and additional clients being added to her caseload, Plaintiff started to fall behind in completing her job duties because she was denied the accommodation. Multiple Support Coordinators worked from home and were not required to work in an office to complete their job tasks. Therefore, Plaintiff's request was reasonable and should have been granted. In May 2018, Plaintiff requested intermittent FMLA. In June 2018, Plaintiff was admitted at McLaren Hospital in Macomb, MI. Plaintiff was prescribed additional medications for her condition. In July 2018, Plaintiff voluntarily entered a rehabilitation program for Behavioral Health at Harbor Oaks. The program lasted 7-10 days.

On or around September 5, 2018, Defendant received another request for accommodations for Plaintiff. Plaintiff again requested to work from home in the morning before her workday began or in the evenings after her workday ended. This accommodation would provide Plaintiff uninterrupted time to complete her duties.

Plaintiff's request for accommodation was submitted to Defendant by Dr. Greening. Plaintiff met with Defendant on or around February 2019. Plaintiff explained her situation, impairments, disability, and need for accommodations. Defendant conveyed to Plaintiff her requests would be shared with Defendant's HR Department.

Plaintiff's request was again denied. Defendant terminated Plaintiff's employment in July 2019 for failure to submit medical documentation. Such documentation was provided less than sixty (60) days prior to the termination.

Further, Defendant was made aware by Plaintiff's psychologist in May 2019 that Plaintiff's inability to timely respond to Defendant's requests for medical updates was an actual condition of her disability. Also in May 2019, Plaintiff was on a medical leave prescribed by her psychologist, which was originally anticipated to last until at least June 30. Plaintiff was unable medically to return to work after June 30, 2019. On or around May 6, 2019, Plaintiff filed a charge with the Michigan Department of Civil Rights alleging that her requests for accommodation had been wrongfully denied. Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission on or around August 2020 alleging violations of the ADAAA. On or around September 17, 2020, the EEOC issued a Right to Sue letter to Plaintiff. Complaint, RE 15, Page ID ## 84-91.

STANDARD OF REVIEW

. . . The ADA was enacted in response to congressional findings highlighting "the continuing existence of unfair and unnecessary discrimination and prejudice [that] denies people with disabilities the opportunity to compete on an equal basis." 42 U.S.C. § 12101(a)(8). When the Act was amended in 2008, "Congress reasserted its goal of 'provid[ing] clear, strong, consistent, enforceable standards' to implement a 'comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 849 (6th Cir. 2018) (alteration in original) (quoting 42 U.S.C. § 12101(b)(1), (2)).

To that end, the ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The Act's broad definition of discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A); *see also Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 868 (6th Cir. 2007).

. . . We review a district court's grant of summary judgment de novo, viewing all the evidence in the light most favorable to the nonmoving party and drawing "all justifiable inferences" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The central question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

*Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 415-416 (6th Cir. 2020).

This Court reviews *de novo* a district court's decision granting summary judgment. *George v. Youngstown State Univ.*, 966 F.3d 446, 458 (6th Cir. 2020). A court may grant summary judgment if there is "no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute of material fact when "the evidence is such that a reasonable jury could [*10] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91

L. Ed. 2d 202 (1986). "The moving party bears the burden of showing that no genuine issues of material fact exist." *Rafferty v. Trumbell County*, 915 F.3d 1087, 1093 (6th Cir. 2019). When considering a motion for summary judgment, "the evidence is construed and all reasonable inferences are drawn in favor of the nonmoving party." *Wright v. City of Euclid*, 962 F.3d 852, 864 (6th Cir. 2020) (quoting *Burgess v Fischer*, 735 F.3d 462, 471 (6th Cir. 2013)). "[A]t the summary judgment stage the judge's function is not . . . to reweigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

*Weijie Lu v. Univ. of Dayton*, 2023 U.S. App. LEXIS 31349, \*9-10, 2023 WL 81872992023 FED App. 0485N (6th Cir., November 27, 2023).¹

---

¹ Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden then shifts to the opposing party, who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (citation omitted). The court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

   When the moving party "also bears the burden of persuasion at trial, [its] 'initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."'" *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (quoting *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)); *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) ("[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the

ARGUMENT

It was error for the trial court to reject McKinney's claims for unlawful disability discrimination and retaliation. The trial court dismissed McKinney's case, essentially, on the basis that, as a matter of law, McKinney was not qualified to conduct her twenty-two profession as a licensed social worker. The trial court accepted that McKinney has a disability for ADA purposes, but that her incompetence as a social worker was fatal to her claims.

McKinney is a "qualified individual" so long as she can perform the essential functions of a social worker, her position with the County for the entire time of her employ, with or without reasonable accommodation. 42 U.S.C. §12111(8); *Humphrey v Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1135 (9th Cir. 2001). "At the summary judgment stage, the employer's judgment will not be dispositive on

_____

court to hold that no reasonable trier of fact could find other than for the moving party.") (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984) (emphasis omitted))).

In reviewing cross-motions for summary judgment, courts must apply the proper standard of review for each motion and may not "treat the case as if it was submitted for final resolution on a stipulated record." *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)); *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019) ("[W]here, as here, the parties filed cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" (quoting *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016)) (internal quotation marks omitted)). *Mockeridge v. Alcona Cnty.*, 2023 U.S. Dist. LEXIS 176134, *19-22 (E.D. Mich. September 29, 2023).

whether a function is essential . . . ." *Rorrer v City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014).

The "ADA mandates an individualized inquiry" into whether the disability disqualifies the employee from the subject position. *Keith v Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013). The County failed to offer any evidence to demonstrate it engaged in such inquiry. On this basis alone, it was error for the trial court to grant summary judgment to the County; if anything, for this same reason, summary judgment should issue in favor of McKinney, or, at the very least, factual issues on and surrounding this point precluded summary judgment for either party.

An employer most certainly may be found liable for engaging in unlawful disability discrimination in rejecting an accommodation request to perform all or a substantial part of the work from the employee's home. *Humphrey, supra*, 239 F.3d at 1137; *Bisker v GGS Info. Servs.*, 2010 U.S. Dist. LEXIS 53879, *4, *9-*12 (M.D. Pa. 2010)(where disabled employee alleged employer discriminated against her when it denied her request to work from home contending employee not qualified to perform essential functions of job working from home and employer failed to show proposed accommodation unreasonable or imposed undue hardship on its business, factual dispute precluded entry of summary judgment, specifically, factual issue on whether attendance, normal five-day work week, and face-to-face interaction with fellow employees constituted essential function of her job). *See generally* Arlene S.

Kanter, *Remote Work and the Future of Disability Accommodations*, 107 CORNELL L. REV. 1927, 1936 (November, 2022)("According to the 2003 EEOC Guidance, remote work is an example of a modification of a workplace rule that may be considered a reasonable accommodation"); *see also id.* at 1936 n.17 (in September 2021 EEOC filed its first case involving remote work after manager denied request to work at home as reasonable accommodation even though manager worked from home during Covid-19 pandemic).

An employee working out of her home can perform the essential functions of the position when she can perform acts fundamental to the employment position, and that is always a factual determination that can only be made on a case-by-case basis. *Bisker, supra,* at *4 (citing *Turner v Hershey Chocolate U.S.*, 440 F.3d 604, 612 (3d Cir. 2006). *See also Solomon v Vilsack*, 763 F.3d 1, 10 (D.C. Cir. 2014)(advances in technology will make it "rare that any particular type of accommodation will be categorically unreasonable as a matter of law").

During and since the pandemic, the courts are increasingly becoming more willing "to reject the employers' judgment regarding the requirement of physical presence in the workplace, or at least require a determination by a jury on the question of whether or not an employee could meet the essential functions of the particular job at issue by working from home." *Kanter*, *supra*, at 1957-1958.[2]

---

[2] "One study predicts that the number of employees working from home will triple

In *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, this Court held that a jury could reasonably conclude the employee was "otherwise qualified to perform her job from home despite employer's evidence that in-person attendance of an essential function of the job," affirming jury verdict for the employee because employee's evidence was sufficient to enable a reasonable jury to conclude the employee could perform all of the essential functions of her job remotely while on bed rest in face of employer's evidence that attendance at workplace does not necessarily become an essential function of her job just because the employer so maintains. 883 F.3d 595, 599, 603 (6th Cir. 2018). "Employers [must] make reasonable accommodations for its employees, including allowing telecommuting under the proper circumstances." *Id*. at 605.

Likewise, in *Hostettler v Coll. Of Wooster*, 895 F.3d 844, 856, 858-859 (6th Cir. 2018), this Court reversed the trial court's decision rejecting the employee's claim and accepting employer's averment that work from home precluded the employee from performing essential function of the position and remanded for fact questions on whether the employee could show ability to perform essential function of job remotely.

Recent decisions of the trial courts in this circuit are in accord: *Russo v Moore*

---

in relation to the pre-pandemic workforce. *See* David Altig et al., Firms Expect Working from Home to Triple, Fed. Rsrv. Bank Atlanta (May 28, 2020) . . ." Kanter, *supra,* n.281.

*Ingram Johnson & Steele, LLP*, No. 3:20-cv-00820, 2022 U.S. Dist. LEXIS 97574, at 14-15 (M.D. Tenn. June 1, 2022) (denying employer's motion to dismiss where employee with severe anxiety sought to work remotely); *Kelly v First Data Corp.*, No. 1:19-cv-372, 2020 U.S. Dist. LEXIS 13239, at 46-47 (S.D. Ohio Jan. 27, 2020) (denying employer's motion to dismiss where employee alleged employer unreasonably denied request to work from home as reasonable accommodation); *Masters v Class Appraisal, Inc.*, No. 2:17-cv-11283-LJM-EAS, 2019 U.S. Dist. LEXIS 161487, at 22-24 (E.D. Mich. Sept. 23, 2019) (denying summary judgment for employer contending allowing employee with multiple sclerosis to work from home would pose undue hardship where reasonable jury could find employee just as productive working from home as in office); *Conaway v Detroit Pub. Sch. Cmty. Dist.*, 2021 U.S. Dist. LEXIS 241862 (E.D. Mich. Dec. 17, 2021)(allowing for teacher to perform job duties remotely two days per each work week).

Other Circuit Courts readily hold likewise, eschewing district courts' granting of summary judgment by giving undue weight to employer's assertion of its alleged business judgment that working from home impairs the employee's ability to perform essential function of position. *See, e.g.*, *MacMillan v City of New York*, 711 F.3d 120, 123 (2d Cir. 2013)(vacating summary judgment for employer and remanding for further proceedings because district court failed to conduct sufficiently detailed factual review that arrival at work at specific time was essential

11

function); *DeRosa v Nat'l Envelope Corp.*, 595 F.3d 99, 104-05 (2d Cir. 2010)(vacating summary judgment for employer because employee not precluded from arguing he could fulfill essential functions of job working from home); *Laguerre v. Natl Grid USA*, 2022 U.S. App. LEXIS 6328 (2d Cir. March 11, 2022); *Woodruff v Peters,* 482 F.3d 521, 523 (D.C. Cir. 2007)(reversal of summary judgment for employer who rejected plaintiff's request to work at home as accommodation required where employer granted same request of another employee in same division); *Langon v Dep't of Health & Hum. Servs.*, 959 F.2d 1053, 1060-1061 (D.C. Cir. 1992)(genuine factual issues precluded summary judgment for employer on whether employee working from home could perform essential functions of job because multiple sclerosis worsening and on whether such accommodation would constitute undue hardship on employer's business); *Humphrey, supra.*

Remote work may be a reasonable accommodation despite employers' objections or alleged exercise of its business judgment concluding otherwise. *See, e.g.*, *Laguerre, supra (*reversing summary judgment for employer in face of showing that employee with lupus qualified to perform job remotely even if employer would have to buy additional technology to assist her in performing job requirements). And in applying the ADA so as to serve the intent behind that legislation to curb unjust disability discrimination, courts must be ever mindful of the prevalence of "ablist"

12

discrimination in the workplace disguised as business necessity to diminish rights of employees or applicants for employment, especially when, as in the present case, it comes to persons with mental disabilities and emotional impairments. *See, e.g., Karraker v Rent-A-Center, Inc.*, 411 F.3d 831, 834 (7th Cir. 2005):

> Americans with disabilities often faced barriers to joining and succeeding in the workforce . . . including attitudinal barriers resulting from unfounded stereotypes and prejudice. People with psychiatric disabilities have suffered as a result of such attitudinal barriers, with an employment rate dramatically lower than people without disabilities and far lower than people with other types of disabilities.

McKinney demonstrated she was able to perform the essential function of her job and would have continued to be so able had the County granted her reasonable requests for accommodation in the form of: working at home, primarily, instead of at the office, for most of her weekly working time; a leave of absence; and flexible scheduling.

Absences from the workplace because of an employee's disability "do not in and of themselves render him unqualified for his position." *Fisher v Nissan N. Am., Inc.*, 951 F.3d 409, 418 (6th Cir. 2020). Even where an employee is not qualified for the desired position, the County was obligated to consider placing her in alternative positions, *id.* at 420, and the County offered no evidence of attempts to identify suitable positions for McKinney.

By failing to acknowledge and react in any way (other than absolutely ignoring her requests for accommodation, again, and again, and again), the County,

as a matter of law, constructively discharged McKinney over a year before it notified her in writing unequivocally that it was terminating her employment. *Crabill v Charlotte Mecklenburg Bd. Of Educ.*, 423 Fed. Appx. 314, 324 (4th Cir. 2011)(complete failure to accommodate in face of repeated requests sufficient to show deliberateness necessary to constitute constructive discharge). At a minimum, McKinney's evidence, only weakly opposed by the County, precluded summary judgment because a reasonable jury could find a causal connection between the failure to accommodate and the adverse employment action. *Id*. (holding trial court erred in granting summary judgment on reasonable accommodation claim).

McKinney has proffered evidence that, despite its staunchly resisting McKinney's compelling showing of her ability to perform and exercise her professional judgment as a social worker for the County soundly and effectively from home, the County has willingly allowed no less than six County employees[3] in McKinney's department and similarly-situated and comparable in all material ways to McKinney to work from home. This, alone, raises one or more disputes of material factual issues precluding summary judgment. *Woodruff, supra,* 482 F.3d at 523 (employer's allowing of another employee in same division as plaintiff to work at home while forbidding plaintiff to do so probative of ability of plaintiff to perform

---

[3] Names of those employees not disclosed herein in respect of the interests of the privacy of those persons.

essential function of position from home militating in favor of plaintiff).

Beyond that, McKinney has established she earned a B.S.W. (bachelor of social work degree) from Madonna University in 1997 and has been duly licensed as a social worker in the State of Michigan continuously and in good standing since 1997. Further, she has further shown that she exercises her own professional judgment as a licensed social worker without supervision, that she is not subject to supervision in rendering such professional judgment and services to her patients, and has always done so in her position faithfully and expertly in her nearly fifteen-year tenure with the County – the only exception being when she admitted herself for hospitalization and otherwise required medical leave from the position, which renders entirely incredulous the County's argument that her working from home renders her "otherwise unqualified" by her disability because her working remotely keeps the County from exercising necessary supervision.

In fact, as she has proffered, as a professional, there is no, and never has been, any legitimate requirement that she be supervised in the exercise of her professional judgment and services as a licensed professional social worker. If her qualifications in her field of social work were, in fact, subject to supervision by others within the County less qualified than her in the field of social work, then she would never have been licensed by the State as a social working in good standing continuously for the past 26 years.

Further, the record evidence establishes that the County has never required her to serve "office hours" resident at any particular location, further impeaching the contention of the County that she must be situate in a County office, performing no duties from outside the office. In fact, her job has always been an itinerant one, requiring her in the performance of her usual duties to be *outside and away from* the County office. The predominant part of her job was to tend to her patients (or, stated otherwise, her clients or "consumers" in the common parlance of her practice of social work for the County) at the consumers' own homes.

When she was not performing the obligations of her practice at the consumers' homes, she was required to perform her duties otherwise being on the road, in transit, or situated in her car, doing paperwork, remote communicating, and other duties from her car.

When she was not so situated, for the remainder of the time she was required to do other of her job duties not at any main office of the County, but, instead, at other remote "drop-down stations" of the County outside of the main office. Finally, only a small part of the balance of her time was spent in transit, going portal to portal, home to home, drop-down station to station, and with only a small fraction of her time spent at the actual home office of her division, and, to the extent her job required "supervision," if any, her small time actually spent at the home office, as required,

could be realized.[4]

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

In conclusion, McKinney respectfully asks this Honorable Court to reverse the judgment of the trial court and remand the case to the trial court for entry of summary judgment in favor of McKinney, or, alternatively, with instructions that the

---

[4] As the evidence establishes, in general, about 70 per cent of her time was itinerant – at customers' homes or en route to and from them, or working from her car as the requirements of her position provided, with approximately 10-15 percent spent at the "touchpoint" stations, and the balance of only 15-20 per cent of her time at the home office.

Her accommodations proposal had her substantially working from home, but with one working day per week spent at the office. So her proposal would not have modified, subtracted from, or added to, the time she was usually required to perform her job responsibilities or customarily performed them with the consent of the County.

Further, McKinney's treating physician, Dr. Nina Anderson, gave sufficient evidence that McKinney was fully competent to perform all required job duties and would be especially so with the benefit of the accommodations requested.

The County's argument was a red herring, and the trial court erred in substituting its own judgment in making determinations of factual questions surrounding the intentions of the County decisionmakers, mainly Human Resources Director Andrew McKinnon, concluding they were decisions made in good faith, when the lion's share of evidence required the contrary, or, at the very least, was more than sufficient to present the trial court with genuine issues of material fact that precluded the trial court from holding, as a matter of law, that McKinney was not "otherwise qualified" under the ADA to preclude summary judgment in favor of the County under Fed. R. Civ. P. 56.

matter proceed to trial for final adjudication.

Respectfully submitted,

CRANBROOK LAW GROUP, P.C.

By /s/ *Barry R. Powers*
    BARRY R. POWERS

DATED: December 26, 2023

STATEMENT OF NUMBER OF COUNTABLE WORDS

Appellant and Filer Barry R. Powers does this 26th day of December, 2023 hereby certify that, according to the word count function of the word-processing system used to prepare the brief, the number of countable words is: 4,546. The number of lines is: 398.

CRANBROOK LAW GROUP, P.C.

By /s/ *Barry R. Powers*
    BARRY R. POWERS
38550 Garfield Road, Suite A
Clinton Township, Michigan 48038
(248) 515-8599
Counsel for Plaintiffs/Appellants

ADDENDUM

Amended Complaint, RE 15 (in its entirety)
Amended Motion for Summary Judgment, RE 18 (in its entirety)
Response to Amended Motion for Summary Judgment, RE 28 (in its entirety)
Response to Plaintiff's Supplemental Brief, RE 29 (in its entirety)
Judgment, RE 32, Page ID # 1321
Opinion and Order, RE 30, PageID ## 1294-1320.
Notice of Appeal, RE 32, PageID # 1322

Certificate of Service

I hereby certify that on December 26, 2023 a true and correct copy of the foregoing was filed electronically using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ *Barry R. Powers*
BARRY R. POWERS