No. 23-1625
_____

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT
_____

ANNA McKINNEY,

Plaintiff-Appellant,

v

COUNTY OF MACOMB, MICHIGAN

Defendant-Appellee.

_____

On Appeal from United States District Court for the Eastern District of Michigan
Case No. 20-cv-13303, Laurie J. Michelson
_____

# CORRECTED BRIEF OF APPELLEE

# Oral Argument Requested
_____

Peter C. Jensen (P25001)
Assistant Corporation Counsel
1 S. Main, 8th Floor
Mt. Clemens, MI  48043
586-469-6346
peter.jensen@macombgov.org

*Attorney for Defendant-Appellee County of Macomb*

## TABLE OF CONTENTS

Table of Authorities ............................................................................................. ii

Oral Argument Statement ................................................................................... iii

Statement of Questions Presented for Review..........................................................iv

Statement of the Case........................................................................................1

Argument..........................................................................................................7

Conclusion ......................................................................................................10

Certificate of Compliance ................................................................................11

Certificate of Service .......................................................................................11

Addendum .......................................................................................................12

## TABLE OF AUTHORITIES

*Anderson v Liberty Lobby Inc.,* 477 US 242 (1986) ................................................. 9

*Briggs v. Potter,* 463 F3d 507 (6th Cir. 2006) ........................................................... 9

*Butler v Village of Round Lake Police Dept.,*
    585 F3d 1020(6th Cir. 2005) ............................................................................. 6

*Celotex Corp., v Catrett,* 477 US 317, 324 (1986) ................................................ 8, 9

*Cleveland v Policy Mgmt. Syst. Corp.,* 526 US 795 (1999) ...................................... 6

*Frierson v Comm. of SSA,* 2023 USDist.LEXIS 70414 ............................................ 9

*Popovich v Cuyahoga Cnty. Court of Common Pleas,*
    276 F3d 808 (6th Cir 2002) ............................................................................... 9

*Reed v P & G Mfg. Co.,* 556 F.Appx 427 (6 Cir 2014) ............................................. 9

*Shqutaj v Gonzales,* 158 F.Appx 665 (6th Cir 2002) .................................................. 9

*White Consol. Indus. Inc. v Westinghouse Elec. Corp.,*
    179 F3d 403 (6th Cir. 1999) ............................................................................... 8

REQUEST FOR ORAL ARGUMENT

Defendant-Appellee requests oral argument. If the Court grants Plaintiff-Appellant request for oral argument, Defendant-Appellee wishes to respond to the numerous factual allegations not found in the record.

STATEMENT OF QUESTION PRESENTED FOR REVIEW

Did Plaintiff-Appellant present any evidence to show that there was a "genuine dispute as to any material fact" or did Plaintiff-Appellant "go beyond the pleadings and by her own affidavits, or by deposition, answers to interrogatories and admission on the file" or "designate specific facts showing that there is a genuine issue for trial"?

    Plaintiff-Appellant answers: "Yes"

    Defendant-Appellee answers: "No"

    This Court should answer: "No"

STATEMENT OF THE CASE

Plaintiff-Appellant Anna McKinney was a case manager II for Vocational and Daycare Services Program at the Macomb County Community Mental Health ("MCCMH) from April 2005 to July 2019. The essential functions for that position are outlined in the Macomb County Classification Description. (Exh 4 Job Description; ECF 18-5, Page ID # 477). The job requires the case manager to visit families on at least a monthly basis and provided extensive documentation. The Medicaid Provider Manual lists the following "core requirements" of the position:

- Assuring that person-centered planning process takes place and that it results in individual plan of service.
- Assuring that the plan of service identifies what services and supports will be provided, who will provide them, and how the case manager will monitor (i.e., internal face-to-face contacts) the services and supports identified under each goal and objective.
- Overseeing implementation of the individual plan of service, including supporting the beneficiary's dreams, goals, and desires for optimizing independence; promoting recovery; and assisting in the development and maintenance of natural supports.
- Assuring the participation of the beneficiary on an ongoing basis in discussions of his plans, goals, and status.
- Identifying and addressing gaps in service provision.
- Coordinating the beneficiary's services and supports with all providers, making referrals, and advocation for the beneficiary.
- Assisting the beneficiary to access programs that provide financial, medical, and other assistance such as Home Help and Transportation services.
- Assuring coordination with the beneficiary's primary and other health care providers to assure continuity of care.
- Coordinating and assisting the beneficiary in crisis intervention and discharge planning, including community supports after hospitalization.
- Facilitating the transition (e.g., from inpatient to community services, school to work, dependent to independent living) process, including arrangements for follow-up services.

1

- Assisting beneficiaries with crisis planning.
- Identifying the process for after-hours contact. (Exh 3, Medicaid Provider Manual, ECF 18-4, Page ID # 475)

Traci Mancini was McKinney's supervisor from 2014 through 2017. (Exh 6 Tracy Mancini Affidavit, ECF 18-7, Page ID # 551-557) She noted that in 2016 she observed a "decline in the ability of McKinney to perform her job functions". She believed that this decline was related to mental health issues and was affecting her ability to do her job. She recalled McKinney being hospitalized from November 8, 2016 through November 25, 2016. Because of this declining condition Mancini placed McKinney on a Performance Improvement Plan (PIP). (Exh 7, Tracy Mancini PIP, ECF 18-8, Page ID # 560) The purpose of the plan was to "assist the employee in performing the essential functions of the job". The identified concerns were to "insure that she is seeing all her consumer's monthly or the frequency as specified in the plan, prepared by the case manager, as required". She was not completing monthly progress reports; not turning in service reviews and plans of service for review; has numerous gaps in her schedule and the schedules did not accurately reflect her whereabouts. The record recording functions were mandatory requirements of the program and necessary for the department to be reimbursed for the services provided. Mancini was required to meet with her weekly for an hour and a half or so to get this work done and work with her to improve her reporting and work-related obligations. (ECF 18-7, Page ID # 553). After the 60-day period,

2

Mancini was required to continue the PIP because McKinney was not improving. As she noted, "…the performance of McKinney continued to slide".

The continued problems of the numerous FMLA leaves would cause McKinney to cancel appointments, force other workers to assume McKinney's workload, and McKinney was removed from the new customer rotation to help reduce her workload. Because of these continued problems, Mancini did not believe that McKinney working from home would either improve or eliminate the many job deficiencies she had.

Steve Smith, at that time the head of the department, became McKinney's next direct supervisor. Like Mancini, Smith believed it was necessary to keep McKinney on a PIP because of her issues with documentation and timeliness. (Exh 9, Smith PIP (ECF 18-10, Page ID # 636). Her schedules continued to be incomplete or inaccurate. She was late for required meetings. She missed contacts for two months that apparently happened but she did not document. Summing up the performance of McKinney, Smith testified that Plaintiff's work performance never reached the level of satisfactory under his watch:

> …[Plaintiff] demonstrated…consistently an inability to do various elements of the job…that is why she was on PIP, (Smith Deposition, ECF 18-9, Page ID # 576)

The last supervisor to work with McKinney was Anita Garr. McKinney was still not performing the essential functions of the position. The January 11, 2019

3

PIP signed by Garr noted that she was not properly completing documentation; her calendars were still inaccurate; she did not complete the progress notes as required. Garr goes on to noted that McKinney was removed from 7 cases due to her inability to keep up with visits and/or plans. Her files were reduced to 35 active cases. Now McKinney had a recipient rights violation pending. She was now working only 25.5 hours a week. (Exh 10, Garr PIP, ECF 18-11, Page ID # 639-640).

Tracy Smith, the Chief of Staff for MCCMH, was the overseer of the VDS program. She explained the Department guidelines that would permit a clinician to work remotely. (Exh 15,Traci Smith Affidavit, ECF 18-16, Page ID # 742-745) Not all employees were eligible to do so: the employee must maintain satisfactory work performance standards for at least three months. Examples of satisfactory work performance include achieving programmatic standards for productivity, contact frequency, documentation quality and timeliness. The records of McKinney's substandard performance did not make McKinney a candidate to work remotely. (ECF 18-16, Page ID # 743-744)

On March 26, 2018, McKinney started treating weekly with Dr. Deborah Greening, a licensed psychologist. (Exh 11, Greening Deposition, ECF 18-12, Page ID # 658) McKinney's FMLA leave time was predicted to expire on April 12, 2019. After that time, the only avenue for work accommodations was the ADAA. 42 USC §12101 et. seq.

4

From April 18, 2018 through April 8, 2012, McKinney was on an FMLA leave due to her intermittent mental health issues. On February 11, 2019 McKinney spoke with Brian Jacks in the HR Department concerning work accommodations. In that meeting, McKinney acknowledged that she had issues with staying focused. She acknowledged that she "can't focus" and wondered if it was because of "depression" or "just getting old". She acknowledged that "she can't get anything done" and feels like "I'm spinning". The feelings were getting "worse". She requested a "flexible schedule". She asked to work from home. She did not provide any framework for a flexible schedule or how working from home would address her problems. Two days later, McKinney spoke with Brian and requested that CMH management not be involved in the "accommodation meeting". (Exh 13, Brian Jacks Notes, ECF 18-14, Page ID # 733-736) A second meeting was, in fact, held with HR. However, at that meeting she stated that she "will try to figure out what's a reasonable accommodation". (Exh 14, Rachel Chordash Notes, ECF 18-15, Page ID # 739).

On April 8, 2019, McKinney did not report to work. She never returned. Efforts were made to contact McKinney. She never responded. Her FMLA benefits had lapsed, and the County provided leave of absence documents for her review. She never responded. (Exh 2, Letters Re Leave of Absence, ECF 18-3, Page ID # 470, 471). The medical evidence provided via Dr. Greening's medical certifications reflected that she cannot work: the May 17, 2019 certification reflects "[Patient]

5

unable to function"; "[Patient] not improving. She has not been able to answer emails or phone messages from work due to severe depression + anxiety" (Ex 12, Medical Certificates, ECF 18-13, Page ID # 726). A final certification form was sent in July (following the termination) wherein Greening noted "[patient] unable to function". (Exh 12, Medical Certificate, ECF 18-13 Page ID # 730).[1] In her deposition testimony, Dr. Greening acknowledged that it was unclear how the accommodations would work:

> I don't think that there was ever a time that I knew her that she was well enough to work. If she had gone back, I didn't think that she wouldn't have been there very long.
>
> Q: Do you have any reason to believe that if—if the County followed to a T your proposed accommodations that she would be any better?
>
> A: No.
>
> Q: It looked like from the time you started to see her in 2018 until you stopped sometime in the summer of 2019 she was continually degrading mentally, is that a fair statement?
>
> A: Yes. (Exh 11, Deposition, ECF 18-12, Page ID # 658)

---

[1] On April 28, 2023, a Social Security ALJ, relying on Dr. Greening's deposition, (ECF 18-12, Page ID # 646-715) found that McKinney "cannot perform her past relevant work as a case worker…[and] no jobs that exist in significant numbers in the national economy that claimant can perform". She was awarded full benefits. The date of disability is April 8, 2019—the last day Plaintiff came to work. *Cleveland v Policy Mgmt. Syst. Corp.*, 526 US 795 (1999) (plaintiff cannot simply ignore the apparent contradictions that arises out of the SSDI total disability claim); see also *Butler v Village of Round Lake Police Dept.*, 585 F3d 1020(6th Cir. 2005)("person who applied for disability benefits must live with the factual representation made to obtain them, and if these show inability to do the job then an ADA claim may be rejected without further inquiry.")

On July 19, 2019, the County terminated McKinney's employment. At that time, she had been absent since April 8, 2019, and she had failed to provide any documentation to support a leave of absence under her collective bargaining agreement. The County considered this failure to act as a "voluntary resign[ation]". (Exh 16, Termination letter, ECF 18-17, Page ID # 746)

The District Court granted Defendant's Rule 56 motion. In that decision, the Court found that Plaintiff-Appellant could not perform the essential functions of job without regular in-person attendance (Court Opinion, ECF 30, Page ID # 1306-1310); that the Plaintiff-Appellant did not identify what potential accommodations she requested (ECF 30, Page ID # 1314); the Defendant made a good faith effort to help Plaintiff-Appellant keep her job (ECF 30, Page ID # 1317); that Plaintiff-Appellant "points to no evidence to suggest that she is entitled to further leniency (ECF 30, Page ID # 1318); and Plaintiff-Appellant failed to show the reason for separation was pretextual. (ECF 30, Page ID # 1319).

## ARGUMENT

Plaintiff-Appellant has filed an argument without any citations to any of the record testimony considered by the District Court; has cited numerous cases without referring to any legal issues considered by the Court in its ruling; and made sweeping allegations without citation to any facts to support them. The most glaring statements include: "that [McKinney's] incompetence as a social worker was fatal

7

to her claim." (Doc. 26, p.15); "The County failed to offer any evidence to demonstrate it engaged in [an individualized inquiry]." (Doc. 26, p. 16). "McKinney demonstrated she was able to perform the essential function of her job and would have continued to be able had the County granted her reasonable requests for accommodation". (Doc. 26, p. 21) Plaintiff-Appellant ignores the unrefuted testimony of Plaintiff-Appellant's last three supervisors that she was unable to perform her essential functions.  Other case managers who were "similarly situated and comparable in all material was to McKinney" were allowed to work from home. This is contrary to the unrefuted affidavit of Traci Smith that McKinney was unable to work from home due to specific shortfalls in her performance of essential functions of the position.  (ECF 18-16, Page ID # 743-744)

Appellate courts review the district court's grant of summary disposition *de novo*. *White Consol. Indus. Inc. v Westinghouse Elec. Corp.,* 179 F3d 403, 407 (6th Cir. 1999).  Under the rule, the moving party must "[show] that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law.  Fed.R.Civ.P, 56(a).  In order to reverse that judgment, the Plaintiff-Appellant must go beyond the pleadings and by her own affidavits, or by depositions, answers to interrogatories and admissions on the file, designate specific facts showing that there is a genuine issue for trial.  *Celotex Corp., v Catrett,* 477 US 317, 324 (1986).

8

Plaintiff-Appellant has submitted a brief with no citation to any *evidence* which she relies on to satisfy this standard. For every legal citation cited, there is no effort to tie the findings in the case to the issue before this Court. There is no argument that the cases cited are somehow distinguished from the cases relied on by the district court. The Plaintiff-Appellant must put forth "evidence on which the jury could reasonably find" in its favor. *Anderson v Liberty Lobby Inc.,* 477 US 242, 252 (1986). In this case, there is not even the "mere existence of a scintilla of evidence" presented by Plaintiff-Appellant to reverse the opinion of the district court. Thus, the Defendant-Appellee can succeed by demonstrating "there is an absence of evidence to support the non-moving party's case. *Celotex, supra, p. 325.*

Plaintiff makes no claim that the decision of the district court relied on erroneous findings of fact or even that there was a clear error in judgement. *Briggs v. Potter,* 463 F3d 507, 509 (6th Cir. 2006). In *Reed v P & G Mfg. Co.,* 556 F.Appx 427 (6 Cir 2014), in the absence of filing any deposition and simply asserting conclusory asserted not based on the record, a motion to reverse a summary judgment will be denied. The district court affirmed the grant of summary judgment because Reed neglected to present the appellate issue in the issues presented for argument section of the brief. There was no legal analysis on the appellate issue:

> Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to flesh out the bones. (citing *Popovich*

9

*v Cuyahoga Cnty. Court of Common Pleas,* 276 F3d 808, 823 (6th Cir 2002)(en banc)

See also *Frierson v Comm. of SSA,* 2023 USDist.LEXIS 70414 ("Determining a party's argument should not be a guessing game. It is not court's job to provide counsel's analysis…not appropriate to leave analysis to the court."); *Shqutaj v Gonzales,* 158 F.Appx 665, 666 (6th Cir 2002)("Where petitioner's brief lacks legal or factual argument, this Court will not examine the record and construct an argument on petitioner's behalf.")

In this case, the Plaintiff has not even identified what findings of fact and/or conclusions of law were erroneous. Plaintiff-Appellant has not met the burden of identifying any "genuine issue of fact" which would require the decision of the district court to be reversed.

## CONCLUSION

Plaintiff-Appellant's appeal alleging that the County discharged her because of a mental disability and allegation that she was discharged in retaliation for filing a request for accommodation be denied for the reason that Plaintiff-Appellant failed to prove that there is any "genuine issue of fact" and failed to provide any legal basis for the reversal as required under Fed.R.Civ.P 56(c).

Respectfully submitted,

*/s/ Peter C. Jensen*
Peter C. Jensen (P25001)
Assistant Corporation Counsel

10

|  |  |
|---|---|
|  | Attorney for Defendant-Appellee<br>1 S. Main, 8th Floor<br>Mt. Clemens, MI  48043<br>586-469-6346 |
| Dated:  January 23, 2024 | peter.jensen@macombgov.org |

CERTIFICATE OF COMPLIANCE

I, Peter C. Jensen, certify that this brief complies with the type-volume limitations, containing only 2561 words within the allowable limit under the Sixth Circuit and Federal Rules of Appellate Procedure.

|  | Respectfully submitted, |
|---|---|
|  | */s/ Peter C. Jensen*<br>Peter C. Jensen (P25001)<br>Assistant Corporation Counsel<br>Attorney for Defendant-Appellee<br>1 S. Main, 8th Floor<br>Mt. Clemens, MI  48043<br>586-469-6346 |
| Date:  January 23, 2024 | peter.jensen@macombgov.org |

CERTIFICATE OF SERVICE

Peter C. Jensen, Assistant Corporation Counsel with the Office of Macomb County Corporation Counsel, being first duly sworn, deposes and states that on the 23rd day of January, 2024, I electronically filed CORRECTED BRIEF OF APPELLEE using the CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/ Peter C, Jensen*
Peter C. Jensen  (P25001)

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| **RECORD ENTRY** | **TITLE** | **PAGE ID#** |
|---|---|---|
| RE 18-3 | Letters RE Leave of Absence, Exh 2 | 470-471 |
| RE 18-4 | Medical Provider Manual, Exh 3 | 475 |
| RE 18-5 | Job Description, Exh 4 | 477 |
| RE 18-7 | Tracy Mancini Affidavit, Exh 6 | 551-557 |
| RE 18-8 | Tracy Mancini PIP, Exh 7 | 560 |
| RE 18-9 | Smith Deposition, Exh 8 | 576 |
| RE 18-10 | Steve Smith PIP, Exh 9 | 636 |
| RE 18-11 | Anita Garr PIP, Exh 10 | 639-640 |
| RE 18-12 | Deborah Greening Deposition, Exh 11 | 646-715 |
| RE 18-13 | Medical Certification, Exh 12 | 726-730 |
| RE 18-14 | Brian Jacks Notes, Exh 13 | 733-736 |
| RE 18-15 | Rachel Chordash Notes, Exh 14 | 739 |
| RE 18-16 | Traci Smith Affidavit, Exh 15 | 742-745 |
| RE 18-17 | Termination Letter, Exh 16 | 746-747 |
| RE 30 | Opinion and Order Granting Summary Judgment | 1294-1320 |